18205

Jackie LEADER, a minor over fourteen years of age, by and through his Guardian *ad Litem,* Ben Leader, Respondent, v. SOUTH CAROLINA HIGHWAY DEPARTMENT, Appellant.

(136 S. E. (2d) 262)

*Messrs. Daniel R. McLeod, Attorney General,* and *Benjamin B. Dunlap, Assistant Attorney General,* of Columbia, and *James L. Moss, Jr.,* of York, *of Counsel, for Appellant,*

*Messrs. Ridley & Simrill,* of Rock Hill, *for Respondent,*

April 29, 1964.

Brailsford, Justice.

This is an appeal from a judgment against the South Carolina Highway Department for damages for personal injuries sustained by plaintiff, Jackie Leader, in an automobile collision, allegedly caused by a defect in a highway.

On the night in question, July 18, 1961, three high school boys were returning to their homes at Camden after

having participated in a golf tournament in Florence. They were traveling in two late model Chevrolet automobiles. The lead car was occupied only by its driver, Thad Vincent. Plaintiff was a passenger in the second car, which was driven by Jay Langston. The speed of the cars was estimated at from 50 to 55 miles per hour and it was estimated that the second car was traveling about 300 feet behind the first. The travelers encountered no rain and the highway was dry until, unexpectedly, the lead car came upon water completely covering the highway for a considerable distance, to a depth of from four to fourteen inches. There was no warning of the presence of the water except that furnished by the illumination from the automobile lights. The jury could have concluded from the evidence that a driver in the exercise of due care may not have seen the hazard until close upon it. We quote brief excerpts from the testimony as to what followed.

Direct Examination, Thad Vincent:

"Q. All right, now tell us in your own words exactly what occurred?

"A. Well, I was driving in front and Jay Langston, the driver of the second car was in back, and we were driving along about 50 to 55 miles per hour, and we had just gone through Rembert, S. C., and we went around a curve and I guess it was about a fourth of a mile I ran upon some water. I couldn't see it so I got right up on it when I hit the water, and I began to fishtail to the left, and water was splashing up on the windshield and I couldn't see, and I didn't think about anything except trying to get out for a minute, and then all of a sudden Jay Langston hit me, and he knocked me in the left-hand ditch, and Jay went in the right-hand ditch, and that was it."

Re-direct Examination:

"Q. Explain what part of your car was struck by this other automobile?

"A. Well, the post right in between the front seat and the back seat.

"Q. On which side?

"A. Not the driver's side, the other side.

"Q. Hit you in the side?

"A. Yes, sir.

"Q. Do you recall which way your car was heading?

"A. It was sort of going perpendicular to the road.

"Q. Perpendicular to the road?

"A. Yes, sir.

"Q. By that you mean sideways?

"A. Yes, sir."

Direct Examination, Jackie Leader:

"Q. Proceed.

"A. We were traveling, and it was about 8:30 when we stopped at Rembert, I would say. We were traveling into Camden, and Thad was in front of us, and we just went around this curve, and we saw Thad hit the water and we saw his car fishtail and spin around. As soon as Jay saw him do that he tried to swerve, he hit his brakes, but the brakes wouldn't hold because we were already in the water, and then Jay tried to swerve and miss him, but Thad was spinning across the road coming right back at us, and Jay hit him on the side of his car. Jay hit Thad on the side of his car, and the two cars spun opposite ways and were sitting opposite each other in the ditches on the opposite sides of the road. * * *"

Re-direct Examination:

"Q. * * * Now, was this other car, Vincent's automobile, moving at the time it was strck?

"A. Yes, sir.

"Q. How was it moving?

"A. The last thing that I remember it was spinning in the road fishtailing, and we thought we were going to hit it head on, but it veered at the last second and we hit the side of it.

"Q. You mean that it was all the way around facing back south?

"A. It was coming at us. We thought we were going to hit head on just straight, and it spun this way so we caught the side."

The defendant excepts to the refusal of the court to grant its motion for a directed verdict on the ground that contributory negligence of the driver of the automobile in which plaintiff was a passenger was established as the only reasonable inference from the testimony and was imputable to plaintiff.

We think that the foregoing references to and quotations from the testimony show that this exception is without merit. It is inferable from the testimony that the drivers of these two automobiles were cast in a sudden emergency without negligence on their part. The issue of contributory negligence on the part of the driver could not have been resolved against plaintiff as a matter of law. Parenthetically, under the pleadings, the issue should not have occupied the time of the court. The defendant's answer simply denied that there was a defect in the highway caused by its negligence and alleged that the damages suffered by plaintiff "were due to an accident, pure and simple, for which the Defendant * * * is not liable." This allegation negatives any causative negligence on the part of the driver, which is not alleged elsewhere in the answer. Nor does the answer allege facts from which any negligence of the driver could be imputed to plaintiff. See Annotation, 59 A. L. R. (2d) 273.

The only other exception is based upon the proposition that the plaintiff failed, as a matter of law, to prove his own freedom from contributory negligence and is clearly without merit.

Affirmed.

TAYLOR, C. J., and LEWIS and BUSSEY, JJ., concur.

MOSS, J., did not participate.